IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| Guilford College, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:21-cv-00838 |
| Travelers Indemnity Company of America, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff Guilford College brought this action in state court on September 20, 2021, against its insurer, Defendant Travelers Indemnity Company of America, alleging that Defendant denied Plaintiff's claim for an insured loss to Plaintiff's business income caused by events related to COVID-19. Defendant removed the matter to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. (ECF No. 1.) Before the Court is Defendant's Motion to Dismiss for failure to state a claim upon which relief may be granted. (ECF No. 7.) For the reasons stated herein, Defendant's motion will be granted.

**I.    BACKGROUND**[1]

Plaintiff is a private, non-profit college in Greensboro, North Carolina. (ECF No. 4 ¶ 2.) It operates as a residential college and typically requires traditional students under the age of twenty-three to live on its campus and use campus facilities. (*Id.* ¶ 9.) From July 2019 to

---

[1] When considering a motion to dismiss, the court accepts as true all well-pleaded allegations in the complaint and views the complaint and any attached exhibits to it in the light most favorable to the plaintiff. *See Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

July 2021, Plaintiff was insured under an insurance policy (the "Policy") by Defendant. (*Id.* ¶ 10.) The Policy included business income insurance. (*Id.* ¶ 42.)

Starting in spring 2020, cases of COVID-19 began to emerge in the United States and North Carolina, including in the vicinity of Plaintiff's campus. (*Id.* ¶ 13.) In response to the spread of COVID-19, the Governor of North Carolina issued several executive orders related to COVID-19, including an order that declared a "State of Emergency," multiple orders restricting gatherings at Plaintiff's campus, an order that prohibited in-person dining at Plaintiff's eating facilities, and a stay-at-home order that restricted operations at educational institutions. (*Id.* ¶¶ 18–23.)

Due to COVID-19 and the government orders related to COVID-19, Plaintiff shifted its spring semester from in-person to remote. (*Id.* ¶ 26.) This entailed directing students not to return to campus after spring break, directing employees to work remotely, and closing residence halls and dining facilities. (*Id.* ¶¶ 26–27.) Plaintiff also canceled on-campus and off-campus events to comply with government restrictions on gatherings. (*Id.* ¶ 27.) Plaintiff lost tuition revenue and room and board revenue and incurred extra expenses when it instituted these measures. (*Id.* ¶¶ 28–29.)

On April 19, 2021, Plaintiff notified Defendant that it had suspended business operations and had insurance claims under the Policy. (*Id.* ¶ 30.) Two days later, Defendant denied the claims. (*Id.* ¶ 31.) Defendant informed Plaintiff that "[t]he presence or possible presence of the COVID-19 virus does not constitute 'direct physical loss of or damage to property' within the meaning of [the P]olicy," (*id.* ¶ 32), and that "[t]he virus exclusion applies . . . as the COVID-19 virus is a virus capable of inducing physical distress, illness, or disease," (*id.* ¶ 33).

Plaintiff then initiated this lawsuit against Defendant, seeking declaratory judgment that the Policy covered the claims, (*id.* ¶¶ 52–66), recovery for breach of contract for not paying the claims, (*id.* ¶¶ 67–74), and recovery for breach of the implied covenant of good faith and fair dealing for denying the claims without first investigating them, (*id.* ¶¶ 75–87).

Defendant files the instant Motion to Dismiss pursuant to R. 12b(6) of the Federal Rules of Civil Procedure asserting that Plaintiff's complaint fails to state a claim upon which relief may be granted.

## II. STANDARD OF REVIEW

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the complaint satisfies the pleading standard under Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). A claim is plausible when the complaint alleges sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The court "view[s] the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a motion to dismiss, "a [district] court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). A district court evaluating a motion brought under Rule 12(b)(6) can also "consider a document submitted by

3

the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Here, Defendant has attached a copy of the Policy to its motion. (ECF No. 8-1.) The Policy is integral to the Complaint and Plaintiff has not challenged its authenticity; therefore, the Court will consider the Policy in addition to the Complaint.

## III. DISCUSSION

Under North Carolina law[2], an insurance policy is a contract, and its terms govern the parties' rights and duties. *Fidelity Bankers Life Ins. Co. v. Dortch*, 348 S.E.2d 794, 796 (N.C. 1986). The meaning of the language used in the policy is a question of law. *Guyther v. Nationwide Mut. Fire Ins. Co.*, 428 S.E.2d 238, 241 (N.C. Ct. App. 1993). The plain language of the policy governs its interpretation. *N.C. Farm Bureau Mut. Ins. Co. v. Martin ex rel. Martin*, 851 S.E.2d 891, 895 (N.C. 2020). If there are any ambiguities, those ambiguities are construed against the insurer. *Id.* In insurance disputes, "[t]he party seeking coverage under an insurance policy bears the burden "to allege and prove coverage." *Id.* (quoting *Brevard v. State Farm Mut. Auto. Ins. Co.*, 137 S.E.2d 837, 839 (N.C. 1964)).

Plaintiff has identified three distinct sections of the nearly two-hundred-page Policy that it argues each can independently provide coverage for its claim. Those sections are: (1) the main coverage clause of the "Deluxe Business Income (and Extra Expense) Coverage Form"; (2) a "Dependent Property" coverage clause located in the "Additional Coverages"

---

[2] The parties agree that the Court should apply North Carolina law to interpret the language in the Policy. (ECF Nos. 8 at 11; 11 at 7); *see Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000) ("[North Carolina law] mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract.").

4

section of that same form; and (3) a "Civil Authority" coverage clause, also located in the "Additional Coverages" section of that same form.³ The Court concludes Plaintiff has not plausibly alleged it suffered any loss that would be covered by any of these sections. The Court addresses each section in turn.

### A. Plaintiff Has Not Alleged a Loss Covered by the Deluxe Business Income (and Extra Expenses) Coverage Form

Plaintiff contends that it has sustained a loss of business income that is covered under the Policy pursuant to the main insuring clause of the "Deluxe Business Income (and Extra Expenses) Coverage Form" section of the Policy. (ECF Nos. 4 ¶¶ 1, 49–50, 58, 59; 11 at 14.) This clause states that:

> [Travelers] will pay for:
>
> - The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and
>
> - The actual Extra Expense you incur during the "period of restoration";
>
> *caused by direct physical loss of or damage to property* at premises which are described in the Declarations . . . .

(ECF No. 8-1 at 67 (emphasis added).)

Plaintiff argues that this language provides coverage because it lost business income due to a "physical loss of . . . property" insofar as it lost full access to and use of its campus property during the COVID-19 shutdowns. (ECF No. 11 at 14.) Defendant argues that this coverage only applies when there has been actual physical damage to property (e.g., fire). (ECF No. 8 at 12–30.) The Court rejects Plaintiff's interpretation of this language and finds that

---

³ The Policy is divided into many titled sections that in turn have subsections that have their own titles. The "Deluxe Business Income (and Extra Expenses) Coverage Form" is the name of a large section of the policy. (ECF No. 8-1 at 67 *et seq.*)

5

Plaintiff's allegations do not state a plausible claim that its loss of business income was "caused by direct physical loss of or damage to property" as required by this section of the Policy.

The North Carolina Court of Appeals recently held that under North Carolina law the foregoing "physical loss" language in a business income insurance policy unambiguously requires that an insured suffer actual physical harm to property, rather than some inability to fully utilize property. *N. State Deli, LLC v. Cincinnati Ins. Co.*, 875 S.E.2d 590, 592–93 (N.C. Ct. App. 2022). In that case, because the "[p]laintiffs did not allege that their loss resulted from physical harm to their property," the court found that the plaintiffs' loss was not covered. *Id.* at 593. Prior to this decision, other courts applying North Carolina law had reached the same conclusion in the context of insurance claims for business income lost due to COVID-19 shutdowns. *See, e.g.*, *Summit Hosp. Grp., Ltd. v. Cincinnati Ins. Co.*, No. 20-CV-254, 2021 WL 831013, at *3 (E.D.N.C. Mar. 4, 2021) ("[A] plain reading of the policy at issue and its provisions requires that there be a direct *physical* loss or damage to plaintiff's properties in order for coverage . . . to apply."), *aff'd*, No. 21-1362, 2022 WL 2072759 (4th Cir. June 9, 2022).

Here, Plaintiff did not allege any physical damage to its property. (*See* ECF No. 4 ¶ 44 ("Guilford College has not claimed physical damage at Guilford College's property caused by COVID-19.").) The Court therefore concludes that Plaintiff has not plausibly pled a loss covered under the main insuring clause of the Deluxe Business Income (and Extra Expenses) Coverage Form in the Policy.

### B. Plaintiff Has Not Alleged a Loss Covered by the Dependent Property Coverage

Plaintiff also argues that the Policy separately extends coverage for losses described in a nearly identical "Dependent Property" coverage clause. (ECF No. 11 at 22.) As mentioned previously, this Dependent Property coverage is part of an Additional Coverages section that

6

follows a few sections after the primary insuring language addressed above. One of the main distinctions between the two clauses is that prior clause triggers for damage to the insured's own premises, whereas the Dependent Property clause triggers for damage to property owned by someone else that the insured depends on (e.g., a vendor or supplier). (*See* ECF No. 8-1 at 78 (defining "Dependent Property").)

Regarding coverage for losses related to Dependent Property, the Policy states that:

[Travelers] will pay for:

(a)  The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

(b)  The actual Extra Expense you incur during the "period of restoration";

*caused by direct physical loss of or damage to property* at the premises of a 'dependent property' located anywhere in the world . . . .

(ECF No. 8-1 at 68 (emphasis added).)

This clause uses the same "direct physical loss of or damage to property" language as discussed above. The same analysis therefore applies. Because Plaintiff has not alleged any physical harm to any Dependent Property (indeed, the Complaint does not identify any Dependent Properties), it has not plausibly pled a loss covered by this clause.

## C.   Plaintiff Has Not Alleged a Loss Covered by the Civil Authority Coverage

The last Policy section that Plaintiff identifies as extending coverage for its loss is the "Civil Authority" coverage, (ECF No. 11 at 15–22), which is part of the same Additional Coverages section as the Dependent Property coverage, (ECF No. 8-1 at 68–69).

Civil Authority coverage requires the insurer to pay for a business's lost income when there are government public safety orders that shut down the neighborhood around the

7

business and thereby cut into the business's revenue.[4] For example, if a building collapses near an insured business and then local authorities prohibit access to the vicinity while they clean up the collapse, an insured might turn to this kind of coverage.[5] Here, the Policy provides coverage based on whether four conditions relating to such a scenario are met:

- First, there must be a "Covered Cause of Loss" (a defined term) that causes damage to property (specifically, property that is in the vicinity of the insured's property and that is not directly insured under the Policy).[6]

- Second, there must be an action of "civil authority" (an undefined term) taken in response to dangerous physical conditions resulting from the damage caused by that "Covered Cause of Loss."[7]

---

[4] The clause states:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, [Travelers] will pay for the actual loss of Business Income you sustain and the actual Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 100 miles from the damaged property; and
>
> (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage . . . .

(ECF No. 8-1 at 68–69.)

[5] *See, e.g., Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 336 (S.D.N.Y. 2004) (finding that civil authority coverage triggered after the terrorist attacks of September 11, 2001, because government orders shutting down Manhattan prevented plaintiff-insured from accessing its offices).

[6] "When a Covered Cause of Loss causes damage to property other than property at the described premises . . . and the described premises . . . are not more than 100 miles from the damaged property . . . ." (ECF No. 8-1 at 68.)

[7] "The action of the civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage . . . ." (ECF No. 8-1 at 69.)

8

- Third, that action of civil authority must prohibit access to an area that immediately surrounds the damaged property and that includes the insured's property.[8]

- Fourth, whatever lost business income that the insured claims coverage for must have been caused by that action of civil authority.[9]

In the past two years many courts across the country have considered whether similar civil authority clauses in insurance policies provide coverage for losses related to COVID-19; however, the vast majority of decisions reviewed by this Court found that Civil Authority coverage does not apply to such claims—for a wide variety of reasons.[10] While the Court finds the reasoning in these many cases persuasive, for the purposes of Defendant's motion in this case, the Court need not address every permutation of the arguments that can be made regarding Civil Authority coverage. Here, it is enough for Defendant to prevail that COVID-19 cannot be a "Covered Cause of Loss" as that term is defined in the Policy. *See Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, 514 F. Supp. 3d 1197, 1205–08 (C.D. Cal. 2021) (finding

---

[8] "When . . . action of civil authority . . . prohibits access to the described premises [and] [a]ccess to the area immediately surrounding the damaged property . . . and the described premises are within that area . . . ." (ECF No. 8-1 at 68–69.)

[9] "[W]e will pay for the actual loss of Business Income you sustain . . . caused by [the] action of civil authority." (ECF No. 8-1 at 68.)

[10] *See, e.g.*, *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F. Supp. 3d 1191, 1205 (D. Kan. 2020) ("[A]ccess to Plaintiff's property was not prohibited by the Stay-at-Home Orders; therefore, the Policy's civil authority coverage provision does not apply."); *WM Bang LLC v. Travelers Cas. Ins. Co. of Am.*, 559 F. Supp. 3d 225, 234 (S.D.N.Y. 2021) ("By failing to plead that neighboring properties suffered any physical loss, Plaintiffs have not met their burden to show they are entitled to Civil Authority Coverage under the Policy."); *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, 537 F. Supp. 3d 780, 793 (E.D. Pa. 2021) ("[T]he relevant Closure Orders were not issued in response to 'dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss.' Rather, . . . the Closure Orders were issued to *prevent* the spread of the COVID-19 virus to any of these properties."); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 625 (E.D. Pa. 2020) ("The civil authority action cannot be both the cause of that damage and the response to it.").

that even though plaintiff insured had plausibly alleged that actions of civil authority in response to COVID-19 damage to nearby property had prohibited access to insured's premises, nevertheless civil authority coverage did not trigger because COVID-19 was not a "Covered Cause of Loss").

Whether COVID-19 can be a "Covered Cause of Loss" is critical due to the second condition for Civil Authority coverage—the requirement that there be an action of civil authority in response to the damage caused by a "Covered Cause of Loss." For this requirement to be satisfied, there must be some underlying "Covered Cause of Loss" with a causal connection to the actions of civil authorities; the mere existence of actions of civil authority in the absence of a related "Covered Cause of Loss" is not enough. Plaintiff's Complaint and arguments indicate that the only possible candidate for this requisite "Covered Cause of Loss" is COVID-19.[11] Therefore, if COVID-19 does not satisfy the definition of "Covered Cause of Loss," then Plaintiff's allegations cannot meet the requirements for Civil Authority coverage. Thus, the definition of "Covered Cause of Loss" is a major issue that both Defendant and Plaintiff have addressed. (ECF Nos. 8 at 21; 11 at 21.)

---

[11] Plaintiff definitively designates the government orders that restricted travel and gatherings as the requisite actions of civil authority. (ECF No. 11 at 17-18 (citing ECF No. 4 ¶¶ 18–26).) Plaintiff has alleged and argued that these orders were in response to damage caused by COVID-19. (ECF Nos. 4 ¶ 17 ("Various civil authorities . . . recognized the presence and loss of or damage to property and people by COVID-19 and . . . have issued orders impairing (and even eliminating) access to businesses and organizations, including Guilford College."); 11 at 17.) This causal relationship between the orders and COVID-19 identifies COVID-19 as the alleged "Covered Cause of Loss" (per the requirement that the actions of civil authority be the result of damage caused by the "Covered Cause of Loss"). The other way to identify COVID-19 as the alleged "Covered Cause of Loss" is to look at what else in the Complaint may have caused damage to property. Accepting for the sake of analysis that a reduction in ability to use property can be damage, the government orders themselves might arguably be the "Covered Cause of Loss" that damages property. However, as other courts have observed, the actions of civil authority and the "Covered Cause of Loss" in this situation cannot be one and the same. *See, e.g.*, *Pez Seafood DTLA, LLC*, 514 F. Supp. 3d at 1207 (C.D. Cal. 2021) ("If an act of civil authority could be a 'Covered Cause of Loss,' the result would be a circular logic . . . .").

With respect to the definition of "Covered Cause of Loss," the Policy states:

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is excluded or limited in:

a. Section C. Exclusions or Section D. Limitations of the Deluxe Property Coverage Form; or

b. Section B. Exclusions and Limitation of this Coverage Form; or

c. In the Declarations or by endorsement.

(ECF No. 8-1 at 68.)

Relevant to both the parties' arguments, the effect of subsection (a) in this definition is to expressly incorporate exclusions located in a different part of the Policy; "Deluxe Property Coverage Form" is the name of a large section of the Policy that itself contains many subsections. (*See* ECF No. 8-1 at 29 *et seq*.) Within these incorporated exclusions, the Policy has a "Virus Exclusion." (ECF No. 8-1 at 48–49.) Defendant argues that this "Virus Exclusion" prevents COVID-19 from being a "Covered Cause of Loss." (ECF No. 8 at 21–30.) The Court agrees.

The Virus Exclusion in the Deluxe Property Coverage Form is part of a list of items that Defendant "will not pay for."[12] (ECF No. 8-1 at 46.) The Virus Exclusion specifically excludes "[a]ny virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness, or disease." (ECF No. 8-1 at 48.) This language is straightforward and unambiguous, as is its effect on Plaintiff's claim. Plaintiff alleged that COVID-19 is a virus that causes disease.[13] (ECF No. 4 ¶¶ 13–14.) Therefore, COVID-19 is not a "Covered

---

[12] "We will not pay for loss or damage caused directly or indirectly by any of the following." (ECF No. 8-1 at 46.)

[13] While the nomenclature makes no difference here, per the federal Centers for Disease Control and Prevention, "COVID-19 is a respiratory disease caused by SARS-CoV-2, a coronavirus." *Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention, cdc.gov/dotw/covid-19/index.html (last visited Aug. 24, 2022).

11

Cause of Loss"; it is excluded from the definition of that term and Defendant is not obligated to pay for damage caused by it. *See, e.g.*, *Boxed Foods Co., LLC v. Cal. Cap. Ins. Co.*, 497 F. Supp. 3d 516, 521 (N.D. Cal. 2020) ("[T]he [p]olicy's Virus Exclusion excludes viruses as a Covered Cause of Loss, thereby precluding [p]laintiffs' claim . . . under the Civil Authority provision."); *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 501 F. Supp. 3d 699, 704 (D. Ariz. 2020) (dismissing insured's complaint because civil authority provision required a "Covered Cause of Loss" and a virus exclusion unambiguously precluded COVID-19 from being a "Covered Cause of Loss"). This means that Plaintiff has not alleged that there were any actions of civil authority taken as a result of damage from a "Covered Cause of Loss," and Plaintiff therefore has not alleged coverage under the Civil Authority provision of its Policy.

Plaintiff's argument to the contrary is unavailing. Plaintiff's response to the Virus Exclusion is that the Complaint did not allege the presence of a virus on its campus and the Virus Exclusion only pertains to viruses actually present on insured property; a virus in the surrounding community would not be excluded. (ECF No. 11 at 10–14.) However, the Virus Exclusion does not contain any language that explicitly states a location a virus must be found for the exclusion to apply. Rather than rely on any plain statement in the Policy, Plaintiff instead argues that: (1) "In order for a virus to be 'capable of inducing . . . disease,' the virus would need to be present at Guilford College's premises such that it could infect a person"; and (2) the fact that the Virus Exclusion is located in the Deluxe Property Coverage section of the Policy indicates it only relates to conditions at the insured property. (ECF No. 11 at 12–13.)

Plaintiff's first argument is not persuasive given that, as alleged by Plaintiff, COVID-19 cases occurred across the United States. (ECF No. 4 ¶ 13.) This demonstrates that

12

Case 1:21-cv-00838-LCB-LPA   Document 19   Filed 09/12/22   Page 12 of 15

COVID-19's capacity to cause disease has nothing to do with whether it is on Plaintiff's campus. Plaintiff draws its argument from an opinion and order of a state district court in Oklahoma, *Choctaw Nation of Oklahoma v. Lexington Insurance Company*, No. CV-20-42 (Okla. Dist. Ct. Feb. 15, 2021). (ECF No. 11 at 11.) This Court respectfully declines to adopt the reasoning of that court.

Regarding Plaintiff's second argument, even in the context of an insurance claim brought under a property insurance policy (rather than a business income policy), the kind of virus exclusion language used in this Policy does not require viral contamination be at the insured premises. *See Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 360–62 (W.D. Tex. 2020) (finding virus exclusion barred coverage under a property insurance policy even though COVID-19 was not present at the insured properties). Accordingly, the fact that the Virus Exclusion here is set out in a property section of the Policy rather than adjacent to the Civil Authority clause is not a reason to construe it as only excluding viruses on Plaintiff's property. *See Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*, 520 F. Supp. 3d 1158, 1168 (E.D. Mo. 2021) (collecting cases where courts have held that virus exclusions were not limited to instances where a virus contaminated the insured's property); *LJ New Haven LLC v. AmGUARD Ins. Co.*, 511 F. Supp. 3d 145, 154 (D. Conn. 2020) (rejecting the virus-on-premises argument because viruses are not intrinsically linked to real property, and because it requires adding a restriction that does not appear in the plain language of the exclusion).

Returning to the plain language of the Policy because the Virus Exclusion does not state that a virus must be discovered on the insured property before it applies, this Court will not impose such a restriction. *See Fidelity Bankers Life Ins. Co.*, 348 S.E.2d at 796 ("[A court has a] duty to construe and enforce insurance policies as written, without rewriting the contract or

13

disregarding the express language used."). A pathogenic virus, wherever found, is not a "Covered Cause of Loss." COVID-19 is a pathogenic virus, and so COVID-19 is not a "Covered Cause of Loss." Therefore, the government shutdown orders that affected Plaintiff were in response to damage caused by a non-"Covered Cause of Loss." Plaintiff has not plausibly pled that it suffered losses due to an action of civil authority taken in response to a "Covered Cause of Loss."[14]

## IV. CONCLUSION

Plaintiff's Complaint includes three counts: one for declaratory judgment, another for breach of contract, and the third for breach of the implied covenant of good faith and fair dealing. (ECF No. 4 ¶¶ 52–87.) Because the Court finds that Plaintiff has not plausibly pled that its insurance claims were covered by the Policy, the Court will dismiss the Complaint in its entirety. *See Golden Coral Corp. v. Ill. Union Ins. Co.*, 559 F. Supp. 3d 476, 491-92 (E.D.N.C. 2021) (dismissing a breach of covenant of good faith and fair dealing count where plaintiff-insured failed to plead a loss covered by the policy because breach of good faith requires a refusal to pay a valid claim as an element).

---

[14] Many courts facing similar COVID-19 insurance cases have found that virus exclusions such as the one in this Policy directly foreclose coverage, without stepping through the definition of "Covered Cause of Loss." *See Cali Fresh, LLC v. Twin City Fire Ins. Co.*, 20CV522, 2021 WL 3620074, at *4–5 (M.D.N.C. Aug. 16, 2021) (collecting cases). The Court finds the reasoning in those cases persuasive and applicable here since the Policy, in addition to incorporating the Virus Exclusion by reference into the "Covered Causes of Loss" definition, also separately incorporates the Virus Exclusion by reference into a set of exclusions that apply to the three sections Plaintiff attempted to plead coverage under. (*See* ECF No. 8-1 at 74.) In this case however, Defendant urged the less direct "Covered Cause of Loss" method of applying the Virus Exclusion, (ECF No. 8 at 24–18), and the Court therefore discussed that ground for dismissing the complaint, which has also been adopted by other courts. *See, e.g., Boxed Foods Co., LLC*, 497 F. Supp. 3d at 521.

14

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 7), is **GRANTED** and Plaintiff's Complaint, (ECF No. 4), is **DISMISSED** in its entirety.

This, the 12th day of September 2022.

/s/ Loretta C. Biggs
United States District Judge